Our final case this morning for oral argument is Sassamore v. Meisels and others. Thank you. Why don't you wait for a couple minutes. Thank you. Excuse me. Mr. Illich, I saw that you did not request time to argue, but in fact, since Mr. Sassamore is going to be presenting, would you like to have a few minutes? If I may address the court, Your Honor? Yes, please. Our office actually made a motion for an extension of time to follow. Yes, that was a very tardy motion, and you had made an appearance earlier and received a prior extension of time and failed to file a brief. That was why that motion was denied. But since you are here, I'm off – yes, it was denied. So since you are here, however, if you would like to take a couple of minutes to respond to Mr. Sassamore, that would be acceptable. If you are, I'll reserve that right. All right. Please have a seat. And, Your Honor, I would then ask for a rebuttal for a minute after that. Why don't you take four minutes now, and you'll have one minute rebuttal, okay? Thank you, Your Honor. May it please the Court, I'm John Sassamore, the appellant. First, the RICO enterprise element. Any reasonable fact finder looking at the evidence which is in the appendix would find that there was an association in fact enterprise for the 1962C claim. That enterprise was the defendant's real estate business. There's a long paper trail of it. Then there's the 1962B claim where the plaintiffs asserted the defendants took over and controlled Ronald Henry's real estate business through a long series of crimes. The district court didn't even consider the 1962B claim. Mr. Sassamore, could you address the question of RICO injury? I'm having difficulty understanding how the rent that you paid for two months and then I think withdrew your rent for June and litigation expenses related to your eviction, the second lawsuit, why those are RICO injuries? Sure, Your Honor. So there were five different predicate acts, including the things which you mentioned, which injured the plaintiffs. In terms of the rent, the reason that that was a RICO . . . Excuse me. You said the plaintiffs. You alone or you plus who? The other plaintiffs were not able to appeal, but there were six plaintiffs, five tenants, and our residence association. I would like to just focus on you and the RICO injury that you allege you suffered. The defendants came pounding on our bedroom doors late at night demanding illegal rent. That's one form of injury. They misrepresented . . . You're saying that was extortion. Correct. Right, because that put you in fear? Yes. And did you . . . you had an obligation to pay rent, however, didn't you? I mean, a general obligation to pay for living circumstances, though in this circumstance, because the housing had been turned into a rooming house and that had not been registered, you objected. We did not have an obligation to pay rent under state law because the law says that the rent could not legally be collected, and there's other case law, which I've cited, where illegal rent is an injury for RICO purposes. And the rent that you paid was the first two months' rent. Is that right? It was, and there were other associated fees. What happened when the rent was paid into escrow? Did that ever get turned over to the landlord, or did that come back to you, or did that go to somebody else? What happened to that? It was set aside, and then after the state housing judge ordered us don't pay any rent, we followed that order as well as all the other orders, and so that came back to us. So the only money that's been paid to anybody on the other side of the V in this case are the first two months' rent. Is that right? Some of the other plaintiffs may have paid more, but for me personally . . . Two months' rent, there was a security deposit, and there were associated credit fees, all of which were because of the extortion and also the fraud of misrepresenting the ownership. Okay, and the litigation expenses are the litigation expenses from the vacate proceedings because the earlier litigation expenses you were reimbursed for, is that correct? No. That's wrong. It was for the eviction proceedings, which turned out to have been brought by the defendant's fake trust in the name of the trust. The state appellate court said that that was improper. The trust lacks legal capacity. Right. Why is that? Go ahead. That's a very common thing to happen. The law of trusts is a little confusing. I think the appellate court got it exactly right that a trust of this sort, any action has to be brought in the name of the trustees, right? So, that's why you won that suit, at least as of that moment, and were enabled to stay in the apartment that you maintained it is illegal for you to reside in. Well, it was illegal to sleep in that rooming unit. That's what the city said. So, at that point, we already were not sleeping there, but we were continuing to use it. Now, this is all in the past now because I'm not living there anymore. I'm having a little trouble understanding why a technical victory in a proceeding where your whole point is that this was illegally rented in the first place, and then when they say, well, in that case, leave, you resisted that. Okay. And you won on the point that they filed in the wrong name. Okay. It wasn't a technical violation. What happened was they set up this fake trust name, Ronald Henry Land Trust. They got Ronald Henry to sign some papers. Yes, but that's not what the appellate court decided. The appellate court decided that the trust, in any trust of this kind, the trustees have to sue in their own name, right? It wasn't a finding that there is no trust and no one can bring the suit. It said they should bring it in their own name. But in this case, there was no trust. The trustees were not named on the deed, and there was no beneficiary. It was just a front for the co-trustees in the enterprise to conceal their identity. I'm just trying to understand what at that point you wanted because it sounds like what you wanted was to stay in this illegally converted place without paying rent. No, I don't want that. No. What we wanted was to stop what they were doing, and I still would hope that the court would write an opinion correcting the district court about the trust law issue because what the district court did would say, okay, a trust name isn't authorized in court but can still be a legitimate owner, and that creates the possibility that trust name is a new kind of corporate entity. What the defendants did here is they concealed their identity behind the fake trust name. Then they were outside the law. They could do whatever they wanted, extortion, defrauding the government out of tens of thousands of dollars of taxes, building violations, more tens of thousands of dollars, penalties. There's just a trust name. It doesn't identify the trustees. There's this long pattern of crimes, and that's what the trust name did here. How this affected you was that you got to stay in this residence for several years paying a total of two months' rent. How this affected me is that I felt cheated and afraid, and other tenants did too, and we wanted to do something to put an end to it, which is why we stayed there in adverse conditions and brought the litigation about it. Because it wasn't just a technical violation. There's a fake trust and a fraud going on here. I believe that those cases brought in the trust name fraudulently, as well as demands for fraudulent huge amounts of rents that were in the cases, do justify that those cases were fraud and extortion and that we're injured by those eviction cases, as well as by paying rent to the wrong people and having the rent be illegal rent taken by extortion. I think what we've been after all along is some justice and to stop this from happening to other people, and I think that all of the elements of RECAL are met. Do you have any evidence or did you submit any evidence to the district court that it is happening to other people at a location other than . . . I guess it was 287 Franklin. We did submit evidence of other similar trusts. There were some members of the enterprise that had a Sylvia Francis Land Trust, and there was a Leon Jenkins Trust, and there's been another appellate decision which cites the one in my favor afterwards of another trust where, again, it was the name of the trust that was being used to conceal the identities. Thank you, Mr. Sassmore. Mr. Illich. May it please the Court, Mark Illich of Barry R. Fearson Associates for the appellees, Garcia Kauffman and Kings County Realty. That's the management company, is that right? No, Your Honor. The appraisers. Yes, they are appraisers. Do you have an explanation for why rent checks were made out to so many different individuals and entities from 287, the residents of 287? We have no idea, Your Honor. The appellees were brought into this case just by happenstance. If I may elaborate a little bit on the underlying facts, the house in question was in foreclosure. The bank had solicited from several brokers to conduct a BPO, a broker's price opinion. You haven't submitted a brief, is that correct? That's correct, Your Honor. We did not submit it. We have to take your word here for what the record is, right? I believe the record is pretty clear on this issue. I just wanted to clarify that. Go ahead. Sure. So the bank had solicited from several, you know, as an open bid for brokers to conduct a BPO, again, a broker's price opinion of the property. Kings County Realty by Mr. Garcia and Mr. Kaufman accepted that offer and tried to conduct said BPO on behalf of the bank. So they had no relation with the trust or whoever else was managing the property or any of the tenants. Let me assume for the moment that all that is absolutely true. Are your clients among those who defaulted in the district court, or did they . . . No. They put in an appearance. That's correct, Your Honor. And they made these arguments. Yes, Your Honor. We opposed the summary judgment motion made by Mr. Sazamore. I see. So there is, regardless of the failure to file a brief in this court, there is a record in the district court to which we could turn . . . Yes. . . . to look for what is the involvement of your particular clients in this matter. Yes, of course, Your Honor. That assertion is, of course, our main defense that we were just drawn into this case. We were being extorted by virtue of this lawsuit that the plaintiffs, mainly Mr. Sazamore, as the court pointed out, he claims that plaintiffs, even though he's a pro se defendant, not representing anyone else, there was an association . . . You are not here on behalf of Mr. Goldberg and Mr. Teitelbaum, correct? That's correct. Only Mr. Garcia, Mr. Kaufman and Kings County Realty. Your position is that those individuals did not play some role in this alleged conduct, assuming it is true . . . Correct. . . . that took over the property in the first place from Mr. Henry. Yes. Everything that Mr. Sazamore has alleged happened independently from my client's involvement in the property. Again, their only involvement was coming to conduct a broker's price opinion on behalf of the bank that was seeking to foreclose on the property. So, it has nothing to do with the landlord-tenant or any other arguments that Mr. Sazamore is making. Your client was engaged by the bank and the record establishes that. Yes, Your Honor. All right. Thank you. If I just may close my arguments. Again, we apologize for not briefing this, but essentially, the arguments made by Mr. Sazamore . . . He's seeking, one, to claim that the lower court judges were biased. It's time to do so. It's long past. Basically, it's a waiver. Notwithstanding, I don't believe he's met the evidentiary burden to prove same. He's also seeking de novo review. We don't think that's appropriate. We believe that a clearly erroneous standard should be applied. And, otherwise, this court . . . Summary judgment. Yes, Your Honor. And, lastly, as Your Honor pointed out, we don't think that Mr. Sazamore has demonstrated his burden for civil RICO against any of the defendants. And, that's our position. I don't think you need to be taking on things about any of the defendants. You made a pretty cogent point about your clients. I'd be interested to hear what Mr. Sazamore has to say about that. Sure. But, we do believe that since we are being lumped in again, that those arguments do apply to our clients, independent of the other parties. Thank you. Thank you, Mr. Illich.  Thank you, Your Honor. I would dispute what the Garcia defendants just said about the record. I think the record is clear. I would have briefed it here if they briefed it. But, in the summary judgment record, I oppose summary judgment with a long list of evidence about how the Garcia defendants were involved in a lot of ways. Give us the high point. Were they not engaged by the bank to provide an appraisal? Garcia showed up with tools for breaking into the house. I met him there. He was there to intimidate me. He was there to intimidate the tenants to move out of the house. There's a long series of phone calls around that and also around the defendants' attempts to lowball the broker price opinion well below market value in order to defraud the bank. Garcia was sent to do the broker price opinions, but he was also connected with the defendants by other personal ties. They submitted a fraudulent short sale application supported by Garcia's lowball, artificially low broker price opinion. The point is he was directly involved and . . . What does that have to do with any of the injuries to you is what I'm trying to figure out. If there was some inappropriate low price or low valuation, how does that affect you as opposed to the bank or, well, the bank primarily? The claims against Mr. Elish's clients are under 1962D, the conspiracy claims. They weren't the ones who did the predicate act that injured us, but instead they were co-conspirators to the RICO violation and the RICO statute holds them accountable for that. I wanted to just say . . . I think we need to wrap up. Okay. Do you have just one last closing remark? I hope the court will do something to fix the district court's mistake about the trust law because that can have effects on a lot of other cases and it's very confusing. Please reverse that. Please grant summary judgment to the plaintiff. Thank you. All right. Thank you very much. Thank you both. Thank you both. All right. That concludes our schedule for oral argument today. We have one case on submission, U.S. v. Broussard. The clerk will please adjourn the court. Court is adjourned.